JASON M. CRANDELL, PLAINTIFF v. AMERICAN HOME ASSURANCE COMPANY, DEFENDANT

No. COA06-533

(Filed 5 June 2007)

**Insurance— professional liability—duty to defend—comparison test**

The trial court erred by granting summary judgment in favor of defendant insurance company on the issue of whether it had the duty to defend plaintiff psychiatrist, the medical director of a Christian counseling service, against a previously filed lawsuit for negligent supervision of a pastor who provided counseling services, negligent infliction of emotional distress, intentional infliction of emotional distress, breach of fiduciary duty, and professional and medical malpractice even though defendant contends the policy provided no coverage when the complaint allegedly related only to early 2000 or later when plaintiff knew or should have known about the pastor's actions, whereas the policy period was from 1 August 1996 through 31 July 1998, because: (1) a comparison test revealed that at least a mere possibility existed that plaintiff's potential liability in that action was covered by defendant's professional liability policy; (2) given the allegations of negligent supervision throughout the pastor's counseling, the complaint contains sufficient factual allegations to bring·the claims within the policy period; (3) plaintiff could arguably be held liable for negligently supervising the pastor during 1997 and 1998 regardless of whether he knew or should have known of any misconduct by the pastor; (4) the negligent infliction of emotional distress and breach of fiduciary duty claims were during the counseling period that began in 1997 and 1998, and·neither of those claims necessarily depend upon the allegation of what plaintiff knew or should have known in 2000; and (5) the duty to defend is not dependent on the viability of the claims, and the possibility that the claims may ultimately be found groundless based on the statute of limitations does not excuse defendant from providing a defense to establish that fact.

Appeal by plaintiff from order entered 6 January 2006 by Judge Anderson D. Cromer in Forsyth County Superior Court. Heard in the Court of Appeals 11 January 2007.

*Carruthers & Roth, P.A., by Jack B. Bayliss, Jr.; and Smith, James, Rowlett & Cohen, L.L.P., by Norman B. Smith, for plaintiff-appellant.*

*Womble Carlyle Sandridge & Rice, PLLC, by Allan R. Gitter and Bradley R. Johnson, for defendant-appellee.*

GEER, Judge.

Plaintiff Jason M. Crandell appeals from an order concluding that American Home Assurance Company ("American Home") had no duty to defend Crandell against a previously filed lawsuit and, as a result, granting summary judgment to American Home. The Supreme Court has established that if review of the pleadings in an underlying action gives rise even to "a mere possibility" that the insured's potential liability is covered by the insurance policy, then the carrier has a duty to defend. *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691 n.2, 340 S.E.2d 374, 377 n.2 (1986). Applying this standard, we reviewed the complaint filed in the underlying action against Crandell, and we hold that at least a mere possibility exists that Crandell's potential liability in that action is covered by American Home's policy. Consequently, we hold that American Home had a duty to defend Crandell and reverse the order of the trial court.

## Facts

In the early 1990s, Michael Rivest was the pastor of a small congregation of the Charismatic Episcopal Church and had established Isaiah 61 Ministries, Inc., which was providing Christian counseling as the St. Matthew's Institute for Healing and Growth. In 1994, Crandell, a licensed psychiatrist, agreed to act as a referral for any of Rivest's clients who could potentially benefit from medical management. Subsequently, Crandell became the medical director and psychiatrist for Isaiah 61. The parties do not dispute that Crandell served in this capacity through 1996. Crandell contends he "provid[ed] essentially the same supervision" as a "volunteer"—rather than as an employee—through 1998.

As more thoroughly detailed in our related opinion, *Foster v. Crandell*, 181 N.C. App. 152, 638 S.E.2d 526, *temporary stay allowed*, 361 N.C. 352, 643 S.E.2d 406 (2007), three of Rivest's counseling clients—Freida Foster, Tami Borland, and Kathy Bowen—filed suit against Isaiah 61 and Rivest in October 2001 (the "Isaiah litigation"). Foster, Borland, and Bowen alleged that, between 1996 and 2001,

Rivest committed various "indecent liberties" and used "mind control techniques, threats and intimidation to illegally obtain money" from them. Foster, Borland, and Bowen ultimately settled with Isaiah 61 and Rivest and voluntarily dismissed the Isaiah litigation with prejudice in June 2004.

Prior to the settlement of the Isaiah litigation, Foster, Borland, and Bowen filed suit against Crandell and his employer, PsiMed, P.A. (the "Crandell litigation"). After voluntarily dismissing that action without prejudice, plaintiffs refiled suit in January 2004. In the Crandell litigation, Foster, Borland, and Bowen asserted claims against Crandell for negligent supervision of Rivest, negligent infliction of emotional distress, intentional infliction of emotional distress, breach of fiduciary duty, and professional and medical malpractice.

American Home is the carrier on a professional liability insurance policy for Isaiah 61 and its employees covering the period from 1 August 1996 until 31 July 1998. American Home provided partial coverage and defense for both Isaiah 61 and Rivest during the Isaiah litigation. Crandell also demanded coverage from American Home in the Crandell litigation and sought to involve himself in the settlement proceedings in the Isaiah litigation, contending that he, like Rivest, was an employee of Isaiah 61. In August 2004, American Home declined to defend Crandell in the Crandell litigation, concluding that he was "neither a named insured nor an additional insured" under American Home's policy with Isaiah 61.

On 22 June 2005, Crandell filed a complaint against American Home, seeking, among other things, a declaration that Crandell was covered with respect to the claims in the Crandell litigation by American Home's policy with Isaiah 61. American Home filed an answer denying the material allegations of Crandell's complaint and asserting a counterclaim seeking a declaratory judgment that it had no duty to defend or indemnify Crandell in the Crandell litigation.

Crandell moved for judgment on the pleadings and, following discovery, American Home moved for summary judgment. In its summary judgment motion, American Home no longer contended that Crandell was neither a named nor additional insured, but, rather, argued that a duty to defend Crandell never arose because the policy explicitly limited coverage to actions committed during the policy period from 1 August 1996 through 31 July 1998, whereas the complaint in the Crandell litigation only alleged negligent acts by Crandell "[a]s early as 2000."

The parties' motions came on for hearing during the 3 January 2006 civil session of Forsyth County Superior Court. The trial court concluded that the allegations in the Crandell litigation complaint "relate[d] only to 'early 2000' or later." As this was outside the policy period, the trial court ruled that American Home's "policy afforded no coverage" for Crandell and, consequently, that "there was no duty to defend." The trial court denied Crandell's motion for judgment on the pleadings, awarded summary judgment to American Home, and dismissed Crandell's action. Crandell timely appealed to this Court.

## Discussion

Our Supreme Court has observed that "the insurer's duty to defend the insured is broader than its obligation to pay damages incurred by events covered by a particular policy." *Waste Mgmt.*, 315 N.C. at 691, 340 S.E.2d at 377. This duty to defend "is ordinarily measured by the facts as alleged in the pleadings . . . ." *Id.* "When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." *Id.* An insurer is excused from its duty to defend only "if the facts are not even arguably covered by the policy." *Id.* at 692, 340 S.E.2d at 378.

Any doubt as to coverage must be resolved in favor of the insured. *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 735, 504 S.E.2d 574, 578 (1998). If the "pleadings allege multiple claims, some of which may be covered by the insurer and some of which may not, *the mere possibility* the insured is liable, and that the potential liability is covered, may suffice to impose a duty to defend." *Id.* (emphasis added). *See also Waste Mgmt.*, 315 N.C. at 691 n.2, 340 S.E.2d at 377 n.2 ("[A]llegations of facts that describe a hybrid of covered and excluded events or pleadings that disclose a mere possibility that the insured is liable (and that the potential liability is covered) suffice to impose a duty to defend upon the insured."); *Naddeo v. Allstate Ins. Co.*, 139 N.C. App. 311, 319, 533 S.E.2d 501, 506 (2000) (holding that pleadings, which disclose "mere possibility" that potential liability is covered suffice to impose duty to defend upon insurer (emphasis omitted)).

In determining whether an insurer has a duty to defend the underlying lawsuit, "our courts employ the so-called 'comparison test.' " *Holz-Her U.S., Inc. v. U.S. Fid. & Guar. Co.*, 141 N.C. App. 127, 128, 539 S.E.2d 348, 349 (2000) (quoting *Smith v. Nationwide Mut. Fire Ins. Co.*, 116 N.C. App. 134, 135, 446 S.E.2d 877, 878 (1994)). That test

requires us to read the pleadings in the underlying suit side-by-side with the insurance policy to determine whether the alleged injuries are covered or excluded. *Id.*

In this case, a side-by-side comparison of the pertinent American Home policy with the complaint from the Crandell litigation reveals at least a "mere possibility" of coverage. The sole dispute presented by the parties is whether the acts or omissions alleged in the Crandell litigation fell within the policy period of 1 August 1996 through 31 July 1998.

The complaint alleged that plaintiffs Bowen and Borland each began psychological counseling with Rivest in 1997 and Foster in 1998, and "[a]t all times alleged herein, Crandell maintained supervisory authority over Rivest." The complaint added that "[a]t all times during the counseling relationship between Rivest and the plaintiffs, Crandell was Rivest's and/or Isaiah 61 Ministeries' medical director and/or clinical supervisor." The complaint then alleged "Defendant Crandell, at all times alleged herein, had the ability to properly supervise and control Rivest's behavior; however, he failed to do so." Given the allegations of negligent supervision throughout Rivest's counseling of the plaintiffs, which the complaint indicates began in 1997 and 1998, it is apparent that the complaint contains sufficient factual allegations to bring the claims within the policy period. *See St. Paul Fire & Marine Ins. Co. v. Vigilant Ins. Co.*, 919 F.2d 235, 239 (4th Cir. 1990) (holding that allegations passed the "comparison test" when complaint did not allege that plaintiffs sought relief for only the time after insured psychiatrist's improper sexual contact, a date outside the policy period, but rather allegations referred to entire treatment period, a portion of which fell within policy period).

American Home nonetheless urges this Court to focus on another paragraph of the compliant that states:

> *As early as 2000*, [Crandell] knew or should have known that . . . Rivest was engaged in an unprofessional, unethical and illegal relationship with [Foster, Borland, and Bowen].

(Emphasis added.) According to American Home, nothing can "change the indisputable fact" that this paragraph only references "early 2000," long after American Home's policy had expired. According to American Home, this allegation is controlling because any negligent supervision claim required proof that Crandell "knew or should have known" about Rivest's conduct: "The 'early

2000' dates . . . are pivotal because those allegations unequivocally establish the earliest possible time by which they allege that Crandell's conduct (whether by negligent act, error or omission) supports the plaintiffs' claims." We disagree.

American Home has overlooked *Mozingo v. Pitt County Mem'l Hosp., Inc.*, 331 N.C. 182, 189, 415 S.E.2d 341, 345 (1992), in which our Supreme Court held that "a physician who undertakes to provide on-call supervision of residents actually treating a patient may be held accountable to that patient, if the physician negligently supervises those residents and such negligent supervision proximately causes the patient's injuries." Under *Mozingo*, Crandell could arguably be held liable for negligently supervising Rivest during 1997 and 1998 regardless whether he knew or should have known of any misconduct by Rivest. American Home has also overlooked the three plaintiffs' claims for negligent infliction of emotional distress and breach of fiduciary duty during the counseling period that began in 1997 and 1998—neither of those claims necessarily depend upon the allegation of what Crandell knew or should have known in 2000.

American Home's focus on a single sentence in the complaint to the exclusion of other allegations referring to acts and omissions within the policy period overlooks the applicable test, which requires only that the complaint give rise to a "mere possibility" that the potential liability is covered by the policy. *See Naddeo*, 139 N.C. App. at 319-20, 533 S.E.2d at 506 (insurer had duty to defend bodily injury claims arising from an automobile accident when insurer was aware that the accident may have happened either before or after 12:00 a.m. on the day the policy was cancelled); *Bruce-Terminix*, 130 N.C. App. at 735, 504 S.E.2d at 578 ("Although [the insurer] brings forth arguments addressing each claim for relief, the possibility that [the insurer] could have been liable under one of the claims would have sufficed to impose a duty to defend."). We cannot, as American Home urges, construe Paragraph 20 as negating the rest of the complaint.

American Home argues further that any allegations from before "early 2000" are barred by the applicable statutes of limitations. The duty to defend is not, however, dependent on the viability of the claims—"the insurer has a duty to defend, whether or not the insured is ultimately liable." *Waste Mgmt.*, 315 N.C. at 691, 340 S.E.2d at 377. As the Supreme Court further pointed out in *Waste Management*, "the insurer is bound by the policy to defend groundless, false or fraudulent lawsuits filed against the insured . . . ." *Id.* at 692, 340 S.E.2d at 378 (internal quotation marks omitted). It is only "if the facts [in the

complaint] are not even arguably covered by the policy [that] the insurer has no duty to defend." *Id.* Indeed, the American Home policy specifically provides for a duty to defend "even if any of the allegations of the claim or suit are groundless, false or fraudulent." Here, the claims may ultimately be found groundless because of the statute of limitations, but that possibility does not excuse American Home from providing a defense to establish that fact.

Since we cannot conclude that the facts alleged in the underlying complaint "are not even arguably covered by the policy," we must hold that American Home had a duty to defend Crandell. *Id. See also St. Paul Fire & Marine*, 919 F.2d at 240 ("If there is *any* chance that [the patient's] claim even *arguably* developed during the [insurer's] policy period, [the insurer] had a duty to defend."). The trial court, therefore, erred in entering summary judgment in American Home's favor. We reverse that order and remand for entry of judgment in Crandell's favor on the issue of the duty to defend. *See Purcell v. Downey*, 162 N.C. App. 529, 534, 591 S.E.2d 556, 559 (2004). We express no opinion on any other issues raised by the pleadings and parties in this case.

Reversed.

Judges CALABRIA and JACKSON concur.