Johnson & Morris, PLLC v. Abdelbaky & Boes, PLLC, 2017 NCBC 87.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 6151

JOHNSON & MORRIS, PLLC, d/b/a
CAROLINA PEDIATRIC
DENTISTRY,
    Plaintiff,

v.

ABDELBAKY & BOES, PLLC, d/b/a
CAROLINA ORTHODONTICS AND
CHILDREN'S DENTISTRY a/k/a
CAROLINA ORTHODONTICS AND
PEDIATRIC DENTISTRY a/k/a
CAROLINA PEDIATRIC
DENTISTRY AND
ORTHODONTICS a/k/a CAROLINA
ORTHODONTICS AND
CHILDREN'S DENTISTRY a/k/a
CAROLINA ORTHODONTIC AND
PEDIATRIC DENTISTRY a/k/a
CAROLINA PEDIATRIC
DENTISTRY AND ORTHO a/k/a
CAROLINA ORTHO AND PEDO
DENTISTRY,

    Defendant.

**OPINION AND ORDER ON
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

THIS MATTER comes before the Court on Defendant Abdelbaky & Boes, PLLC's Motion for Summary Judgment ("Motion") pursuant to Rule 56 of the North Carolina Rules of Civil Procedure ("Rule(s)").

THE COURT, after considering the Motion, the briefs in support of and in opposition to the Motion, the evidentiary materials filed by the parties, the arguments of counsel at the hearing, and other appropriate matters of record, concludes that the Motion should be GRANTED for the reasons set forth below.

*Morningstar Law Group by J. Christopher Jackson, Esq., Shannon Joseph, Esq., and John Kivas, Esq.; and Hutchison PLLC by Trevor P. Schmidt, Esq. for Plaintiff Johnson & Morris, PLLC.*

*Hedrick Gardner Kincheloe & Garofalo, LLP by Patricia Shields, Esq. and Joshua D. Neighbors, Esq. for Defendant Abdelbaky & Boes, PLLC.*

McGuire, Judge.

## INTRODUCTION

1.      This action arises from a dispute involving Defendant's use of the name Carolina Orthodontics and Children's Dentistry for its orthodontics and pediatric dentistry practice located in western Wake County. Plaintiff Johnson & Morris, PLLC alleges that Defendant's use of Carolina Orthodontics and Children's Dentistry violates its common law trademark rights in the trade name Carolina Pediatric Dentistry, and that Defendant's use of Carolina Orthodontics and Children's Dentistry constitutes an unfair trade practice. Plaintiff contends that Defendant seeks to appropriate for itself the goodwill that Plaintiff has established in providing pediatric dentistry services by willfully naming its practice in a way that confuses and misleads consumers to believe that Defendant's practice is affiliated with Plaintiff. Plaintiff seeks a permanent injunction prohibiting Defendant from doing business under the name Carolina Orthodontics and Children's Dentistry or any other name containing the word Carolina. Plaintiff also seeks an award of damages.

## FACTUAL AND PROCEDURAL BACKGOUND

2.      The Court does not resolve material issues of fact on motions for summary judgment under Rule 56, but only decides whether material issues of fact exist. *See Alford v. Shaw*, 327 N.C. 526, 539, 398 S.E.2d 445, 452 (1990). Here, the

Court recites those facts included in the record that are relevant to the Court's determination of the Motion.

3.      Dr. E. LaRee Johnson, D.D.S. ("Dr. Johnson") is founder and principal of Carolina Pediatric Dentistry and operates the practice with her partner, Dr. Clark Morris ("Dr. Morris"). Plaintiff is a specialized pediatric dentistry practice and treats only children. Pediatric dentistry involves the treatment of infants, children, teens, and children with special needs, and requires that a dentist satisfactorily complete a minimum of 24 months in an accredited pediatric dentistry education program. Drs. Johnson and Morris are both board certified specialists in pediatric dentistry. Plaintiff operates one office located in north Raleigh, North Carolina that does business under the name Carolina Pediatric Dentistry. Plaintiff opened for business in 2002 and has done business as Carolina Pediatric Dentistry since at least March 2004. (Verified Compl., ECF No. 1 at ¶ 9.)

4.      Plaintiff services patients who reside within approximately 75-miles surrounding its office, including patients residing in Raleigh, Durham, Cary, Fuquay-Varina, Morrisville, Wilson, and other nearby towns. (Morris Dep., ECF No. 111, Ex. 5 at pp. 44–45.) Plaintiff submits that this geographic area establishes Plaintiff's geographic market for the purposes of this litigation. (Pl.'s Resp. Opp. Def.'s Mot. Summ. J., ECF No. 82 at pp. 3–4.) (Hereinafter, the Court will refer to this area as Plaintiff's "Market Area".)

5.      To attract new patients to its practice, Plaintiff relies heavily on "word-of-mouth" referrals from other dentists and healthcare providers and parents of

existing patients. (2d Johnson Aff., ECF No. 24 at ¶¶ 11–12.) Plaintiff also markets its practice through special presentations to interest groups and schools and through the use of a commercial website (www.carolinapedo.com) and a Facebook page (www.facebook.com/carolinapediatricdentistry).

6.      In late 2006, Plaintiff attempted to register the Carolina Pediatric Dentistry name with the United States Patent and Trademark Office ("USPTO"). The USPTO refused registration on the principal registry because "the proposed mark merely describes the geographic region where the applicant provides its goods." (ECF No. 17.1, Ex. A.) On March 4, 2015, Plaintiff registered the Carolina Pediatric Dentistry name with the Wake County Register of Deeds. (ECF No. 1.1, Ex. 6.) Plaintiff has not registered the name Carolina Pediatric Dentistry as a trademark with the North Carolina Secretary of State.[1]

7.      Defendant is owned by Drs. Hesham Abdelbaky ("Dr. Abdelbaky") and Jonathan Boes ("Dr. Boes"). Defendant operates two dental practices in and around the greater Wake County area: Triangle Family Dentistry ("Triangle"), and Carolina Orthodontics and Children's Dentistry. (Alvey Dep., ECF No. 111, Ex. 1 at pp. 22–23.) Triangle is a general dentistry practice with four offices in Cary, Morrisville, Wake Forest, and Fuquay-Varina. (Abdelbaky Dep., ECF No. 111, Ex. 7 at p. 7.) Carolina Orthodontics and Children's Dentistry is an orthodontic/pediatric dentistry practice ("ortho/pedo") with two offices; one in Cary and one in Fuquay-Varina. (*Id.*) Dr. Jesse Arbon ("Dr. Arbon") provides orthodontic services at the Cary and Fuquay-

---

[1] See N.C. General Statute § 80.1 et seq. (hereinafter "G.S.").

Varina offices. Both Carolina Orthodontics and Children's Dentistry offices are located more than 25 miles from Carolina Pediatric Dentistry's office.

8. Defendant decided to add a pediatric dentistry practice to its orthodontic practice in its offices in Cary and Fuquay-Varina in 2015, and hired Drs. Jordan Olsen ("Dr. Olsen") and Jenna Alvey ("Dr. Alvey"), both of whom had completed their residencies in pediatric dentistry at the University of North Carolina. (Olsen Dep., ECF No. 111, Ex. 6 at pp. 25–28; ECF No. 111, Ex. 1 at pp. 22–23.) Defendant's ortho/pedo practice opened for business in January 2016 under the name Carolina Orthodontic and Pediatric Dentistry.

9. Defendant has presented evidence that Dr. Arbon recommended using Carolina in the name of the ortho/pedo practice and that Drs. Abdelbaky and Arbon made the final decision to use Carolina in the name. (Arbon Dep., ECF No. 111, Ex. 2 at pp. 68–69.) At the time he recommended the name Carolina, Dr. Arbon was not aware of the existence of Plaintiff's practice. (Arbon Decl., ECF No. 14 at ¶ 9.)

10. Drs. Olsen and Alvey, however, testified that it was Dr. Alvey's husband who suggested the use of Carolina in the ortho/pedo practice's name during a dinner with Dr. Abdelbaky and Dr. Arbon. (ECF No. 111, Ex. 6 at p. 39; ECF No. 111, Ex. 1 at p. 41.) When Dr. Alvey's husband made the suggestion, Dr. Olsen mentioned to Dr. Alvey that Carolina Pediatric Dentistry was the name of Plaintiff's practice. (ECF No. 111, Ex. 6 at pp. 40–41; ECF No. 111, Ex. 1 at pp. 75–76.) Drs. Olsen and Alvey, however, did not believe the use of the name Carolina was a problem because Defendant's practice was located a significant distance from Plaintiff's practice, and

because Defendant's name included "orthodontics." (ECF No. 111, Ex. 6 at p. 41; ECF No. 111, Ex. 1 at p. 76.) Dr. Olsen and Dr. Alvey do not know if Dr. Abdelbaky or Dr. Abron heard their discussion about Plaintiff's use of Carolina in its name. (*Id.*)

11. Defendant presented evidence that it selected the name Carolina for several reasons including its geographic descriptiveness, the fact that several of the doctors in the practice had attended or completed residencies at UNC-Chapel Hill, and the fact that the word Carolina contains two "A"s, which would allow Dr. Arbon to maintain an element of his existing logo that consisted of a stylized letter "A" with braces forming the horizontal line in the letter. (ECF No. 111, Ex. 1 at p. 79; ECF No. 111, Ex. 2 at pp. 69–70; ECF No. 111, Ex. 6 at pp. 25–26, 38–39.)

12. Plaintiff became aware that Defendant was using the name Carolina Orthodontic and Pediatric Dentistry in January 2016, when Dr. Johnson visited Defendant's Cary location to perform a sedation site visit on behalf of the North Carolina State Board of Dental Examiners. (Johnson Dep., ECF No. 111, Ex. 4 at p. 58.) Shortly thereafter, Dr. Morris contacted Dr. Olsen by phone and indicated Plaintiff's objection to Defendant's use of Carolina for its ortho/pedo practice. (Morris Dep., ECF No. 86.2 at pp. 52, 53–54; ECF No. 111, Ex. 6 at p. 131.)

13. On or about March 15, 2016, Plaintiff sent a letter to Defendant to "object to the use of Carolina Orthodontic and Pediatric Dentistry and any similar assumed names and/or trademark" by Defendant. (ECF No. 1 at ¶ 23; ECF No. 1.2 at Ex. 10.) In an effort to resolve the dispute, Defendant changed the name of its ortho/pedo practice to Carolina Orthodontics and Children's Dentistry. (ECF No. 111,

Ex. 2 at pp. 76–77.) Plaintiff, however, continues to object to Defendant's use of the word Carolina in its name. (Johnson Dep., ECF No. 86 at p. 113.)

14. Plaintiff contends that there have been instances of actual confusion between Carolina Pediatric Dentistry and Carolina Orthodontics and Children's Dentistry among consumers. While giving a presentation in Cary in March 2016, Dr. Johnson overheard other dentists expressing the belief that she had recently opened a Cary office. (ECF No. 86 at p. 104.) Additionally, Plaintiff offered the hearsay testimony of Dr. Morris that Plaintiff received two calls from unknown callers asking if Plaintiff had opened a second location in Cary. (ECF No. 86.2 at p. 88.)

15. Plaintiff initiated this action by filing a Verified Complaint and Motion for Temporary Restraining Order and Preliminary Injunction on May 6, 2016. (ECF No. 1.) The Verified Complaint makes claims for unfair competition based on Defendant's alleged infringement of Plaintiff's business name (ECF No. 1 at ¶¶ 39–41), and for unfair and deceptive trade acts and practices in violation of the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"), G.S. § 75-1.1. (ECF No. 1 at ¶¶ 43–49.) Plaintiff's claims are premised on its contention that it has a protectable interest in the exclusive use of Carolina as trademark in connection with providing pediatric dentistry services in the Market Area. The Verified Complaint seeks a permanent injunction and damages, including punitive damages.

16. On September 21, 2016, the Court held a hearing on Plaintiff's Motion for Preliminary Injunction. On October 11, 2016, the Court entered an Order on Motion for Preliminary Injunction denying Plaintiff's request for a preliminary

injection. *Johnson & Morris PLLC v. Abdelbaky & Boes, PLLC*, 2016 NCBC LEXIS 78 (N.C. Super. Ct. October 11, 2016).

17.     On February 28, 2017, Defendant filed the Motion and a Memorandum in Support. (ECF Nos. 71 and 72.) On May 12, 2017, Plaintiff filed its Response in Opposition to the Motion. (ECF No. 82.) On June 12, 2017, Defendant filed a Reply. (ECF No. 107.) Both parties filed extensive evidentiary materials, including affidavits and deposition transcripts, in support of their respective positions.

18.     On June 29, 2017, the Court held a hearing on the Motion, and the Motion is now ripe for disposition.

ANALYSIS

19.     Plaintiff brings claims for unfair competition and for unfair and deceptive trade practices against Defendant. Both claims are grounded on Plaintiff's contention that it has a protectable interest in the use of the word Carolina in connection with the offering of pediatric or children's dental services in the Market Area. Defendant moves for Summary Judgment on the grounds that Plaintiff has no protectable interest in the use of the word Carolina and that Plaintiff has failed to show Defendant's use of the word Carolina is likely to cause confusion amongst consumers of pediatric dental services.

*Summary Judgment Standard*

20.     "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that any party is entitled to

judgment as matter of law." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012). An issue is "material" if "resolution of the issue is so essential that the party against whom it is resolved may not prevail." *McNair v. Boyette*, 282 N.C. 230, 235, 192 S.E.2d 457, 460 (1972). The moving party bears "the burden of clearly establishing lack of a triable issue to the trial court." *N.C. Farm Bureau Mut. Ins. Co. v. Sadler*, 365 N.C. 178, 182, 711 S.E.2d 114, 116 (2011) (quotation marks omitted). The moving party may meet this burden by "proving an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would have been barred by an affirmative defense." *Variety Wholesalers, Inc.*, 365 N.C. at 523, 723 S.E.2d at 747. In considering a motion for summary judgment, all evidence is viewed in the light most favorable to the nonmoving party with the benefit of all reasonable inferences. *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998).

21. "If the movant demonstrates the lack of a genuine issue of material fact, the burden shifts to the non-movant to present specific facts which establish the presence of a genuine factual dispute for trial." *In re Will of Jones*, 362 N.C. 569, 573 669 S.E.2d 572, 576 (2008) (citing *Lowe v. Bradford*, 305 N.C. 366, 369–70, 289 S.E.2d 363, 366 (1982)). In determining whether the non-movant has met its burden, the judge "unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict . . . ." *Sloan v. Miller Bldg. Corp.*, 119 N.C. App. 162, 165-66, 458 S.E.2d 30, 32 (1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252-55 (1986)) (quotations and emphasis omitted). As

recently reiterated by the North Carolina Court of Appeals, the burden on the non-movant goes beyond merely producing some evidence, or a scintilla of evidence, in support of its claims. Rather,

> [i]f the movant meets [its] burden, the nonmovant must take affirmative steps to set forth specific facts showing the existence of a genuine issue of material fact. An adverse party may not rest upon the mere allegations or denials of his pleading. A genuine issue of material fact is one that can be maintained by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and means more than a scintilla or a permissible inference.

*Khashman v. Khashman*, No. COA16-765, 2017 N.C. App. LEXIS 715, at \*15 (Sept. 5, 2017) (citations and quotation marks omitted). In summary, this Court must decide "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." *Anderson*, 477 U.S. at 251.[2]

*Unfair Competition / Trademark Infringement*

22.    In its First Claim for Relief, Plaintiff alleges that Defendant has engaged in "unfair competition . . . as a direct and proximate result of the consumer confusion" caused by Defendant's use of the name Carolina Orthodontics and Children's Dentistry. (ECF No. 1 at ¶ 40.) Plaintiff contends its "principal assertion

---

[2] The Supreme Court of North Carolina has held that "Federal Rule 56 is substantially the same as our Rule 56, and we therefore look to the Federal decisions for guidance in applying our rule." *Singleton v. Stewart*, 280 N.C. 460, 464, 186 S.E.2d 400, 403 (1972); *see also Dendy v. Watkins*, 288 N.C. 447, 452, 219 S.E.2d 214, 217 (1975) ("Federal Rule 56 is substantially the same as Rule 56 of Chapter 1A-1 of the General Statutes and, therefore, it is proper for us to look at the federal decisions and textbooks as well as our own for guidance in applying the rule.").

is that Defendant's use of Carolina Orthodontics and Children's Dentistry is a form of unfair competition involving the infringing use of Plaintiff's common law trademark." (ECF No. 82 at p. 6.) Defendant argues that Plaintiff has no protectable interest in the use of the word Carolina and that there is no likelihood of confusion sufficient to support Plaintiff's claims. (ECF No. 72 at p. 5.)

23. Under North Carolina law, a common law claim for trademark infringement of an unregistered mark is analyzed under federal law standards regarding infringement claims of unregistered trademarks. *See* G.S. § 80.1.1; *Ga. Pacific Consumer Prods., LP v. Von Drehle Corp.*, 618 F.3d 441, 449 (4th Cir. 2010) ("[T]he parties do not dispute that, under the facts of this case, viewed in the light most favorable to [plaintiff], the tests for trademark infringement and unfair competition under the [federal] Lanham act are essentially the same as that for common law unfair competition under North Carolina common law . . . .").

24. In order to prevail on a common law trademark infringement claim, Plaintiff must establish that (a) it has a valid and protectable mark, and (b) that the Defendant's use of its mark is likely to cause confusion among consumers. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 (4th Cir. 1995); *B & J Enters. v. Giordano*, 329 Fed. App'x 411, 416 (4th Cir. 2009). If Plaintiff fails to show the existence of "a valid and protectable mark," summary judgment in favor of Defendant is appropriate. *B & J Enters.*, 329 Fed. App'x at 417 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

25.     Typically, businesses do not enjoy trademark protection in words and phrases that are generic, generally descriptive, or geographically descriptive. *Charcoal Steak House, Inc. v. Staley*, 263 N.C. 199, 201, 139 S.E.2d 185, 187 (1964) ("At common law generic, or generally descriptive, words and phrases, as well as geographic designations, may not be appropriated by any business enterprise either as a tradename or as a trademark.") If, however, a generic or generally descriptive name or mark has acquired a secondary meaning, it may be eligible for protection. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 125 (4th Cir. 1990) ("[I]f a mark is merely descriptive, then proof of secondary meaning in the marketplace is required for the mark to be eligible for protection."). Secondary meaning exists when a business uses a generally descriptive name or mark "for so long or so exclusively or when it has promoted its product to such an extent that the words do not register their literal meaning on the public mind but are instantly associated with one enterprise." *Staley*, 263 N.C. at 201–02, 139 S.E.2d at 187–88; *see B & J Enters.*, 329 Fed. App'x at 417 (A descriptive mark is "eligible for legal protection only if it has been shown to have acquired a 'secondary meaning' in the eyes of the public."). In other words, "[s]econdary meaning is the consuming public's understanding that the mark, when used in context, refers, not to what the descriptive word ordinarily describes, but to the particular business that the mark is meant to identify." *Perini*, 915 F.2d at 125.

26.     Plaintiff concedes that the word Carolina, by itself, is generic or descriptive in nature and is not protectable as a trademark. *Johnson & Morris PLLC,*

2016 NCBC LEXIS 78, at *12–13. Nevertheless, Plaintiff argues that its use of the name Carolina Pediatric Dentistry has caused the word Carolina to acquire a secondary meaning in the Market Area when used in conjunction with other words or terms that refer to a dental practice that provides pediatric or children's dental services. In other words, Plaintiff's position is that Defendant cannot use as a name for its pediatric dental practice any name that begins with Carolina and contains any other words that suggest Defendant provides dentistry services to children.

A. Secondary Meaning

27. In *Perini,* the Fourth Circuit Court of Appeals identified six factors relevant to a finding of secondary meaning: "(1) advertising expenditures; (2) consumer studies linking the mark to a source; (3) sales success; (4) unsolicited media coverage of the product; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the mark's use." *Perini*, 915 F.2d at 125. These factors are relevant to, rather than dispositive of, the secondary meaning inquiry; no single factor is determinative, and all factors need not be favorable for the plaintiff to prevail. *See id.*; *B & J Enters.*, 329 Fed. App'x at 417. The Court will analyze Plaintiff's evidence to determine whether Plaintiff has established a genuine issue of material fact regarding secondary meaning.

i. *Advertising Expenditures*

28. It is undisputed that Plaintiff's primary source of business development is through referrals from other dentists, health care providers, and parents of existing patients. Plaintiff engages in some limited advertising, including sponsoring local

school programs and youth sports teams, and placing promotions in local publications. (Gerdts Dep., ECF No. 111, Ex. 3 at pp. 33, 39.) Plaintiff also advertises online through its website and Facebook page. Plaintiff, however, does not maintain a budget for advertising and has not produced any evidence showing actual advertising expenditures. (ECF No. 86 at p. 54; ECF No. 111, Ex. 3 at p. 33.) *See also B & J Enters.,* 329 Fed. App'x at 419 ("Absent a showing that [advertising] expenditures were effective in causing the relevant group of consumers to associate the mark with itself, secondary meaning cannot be established."). This factor weighs against a finding of secondary meaning.

### ii. *Consumer Studies*

29. Plaintiff acknowledges that it has not conducted consumer studies regarding a connection between the names Carolina or Carolina Pediatric Dentistry and children's dentistry in the Market Area. (ECF No. 82 at p. 11.) While the Court does not place substantial weight on the absence of a consumer study because the businesses involved in this case are relatively small, this factor does not support Plaintiff's contention of secondary meaning.

### iii. *Sales Success*

30. Plaintiff's evidence shows increases in Carolina Pediatric Dentistry's patients and revenues during the past few years, and Plaintiff has a substantial number of patients in the Market Area. (Morris Aff., ECF No. 25 at ¶¶ 8–10.) Although the evidence suggests Plaintiff has a successful pediatric dentistry practice, there is no context from which to compare Plaintiff's sales to other similar practices

in the Market Area. The Court recognizes that gathering such information would be difficult but also notes that without context this sales evidence is less meaningful and lends little support to Plaintiff's argument.

### iv. Unsolicited Media Coverage

31. Plaintiff has not submitted evidence of any unsolicited media coverage of its practice. This factors weighs against Plaintiff's position.

### v. Attempts to Plagiarize

32. The record does not show any previous attempts to plagiarize the name Carolina by a pediatric or children's dentistry prior to Defendant's use of Carolina. *See George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 396 (4th Cir. 2009) ("With regard to the remaining factors, the record discloses that [plaintiff] . . . was not aware of any attempts to plagiarize prior to [defendant's] activities."). Again, this factor does not support a finding of secondary meaning.

### vi. Length and Exclusivity of the Mark's Use

33. The record establishes that Plaintiff has been doing business as Carolina Pediatric Dentistry since 2004. (ECF No. 86 at pp. 36–37.) Carolina Pediatric Dentistry has at all times focused exclusively on the practice of pediatric dentistry. (ECF No. 24 at ¶ 5.) Plaintiff further presents evidence that it was the sole user of the word Carolina among pediatric dentists in the Market Area before the creation of Carolina Orthodontics and Children's Dentistry. (ECF No. 86 at pp. 39–40.)

34.     Defendant contends that Plaintiff does not enjoy exclusive use of the word Carolina because there are many other businesses—including other dental practices in the Market Area that provide services to children—that use Carolina as a descriptive mark.[3] (ECF No. 72 at p. 8.) The Court finds that the widespread use of the word Carolina by businesses, including dental practices, in the Market Area weakens Plaintiff's position that it is entitled to its exclusive use.

*vii.     Plaintiff's Other Evidence Supporting Secondary Meaning*

35.     Outside of the evidence listed above, Plaintiff submitted the affidavits of pediatrician Dr. Dirk Hamp, whose office is in Wake Forest, North Carolina, and dentist Dr. Matthew McNutt, whose offices are in Cary and Clayton, North Carolina, to support Plaintiff's position that the name Carolina has obtained a secondary meaning in its Market Area. Dr. Hamp's Affidavit states that he has been referring patients with pediatric dentistry needs to Carolina Pediatric Dentistry throughout his practice's 13-year history. (Hamp Aff., ECF No. 87.1 at ¶ 2.) Additionally, Dr. Hamp states, "[i]n my mind, and in my practice, 'Carolina Pediatric Dentistry' means Doctor LaRee Johnson's pediatric dentistry practice." (ECF No. 87.1 at ¶ 4.) Dr. McNutt's affidavit contains similar statements. For instance, McNutt affirms that Dr. Johnson's pediatric dentistry practice "is well-known under the name 'Carolina Pediatric Dentistry,' in the areas of Wake County" among both dentists and consumers. (McNutt Aff., ECF No. 87 at ¶ 1.) While the affidavits show that Carolina

---

[3] Defendant previously provided evidence of the substantial number of businesses in the Market Area that use Carolina in their names, including at least four other dental practices that represent that they provide children's dental or orthodontic services. J*ohnson & Morris PLLC*, 2016 NCBC LEXIS 78, at *16-17. Plaintiff does not dispute this evidence.

Pediatric Dentistry has a secondary meaning in the minds of Dr. Hamp and Dr. McNutt, they fail to show that the term Carolina, on its own, is synonymous with Carolina Pediatric Dentistry.

36.     When evaluated together and in the light most favorable to Plaintiff, the evidence fails to establish that "a *substantial number* of present or prospective customers when hearing or reading [Carolina Pediatric Dentistry] would associate the name specifically with [Plaintiff's] business." *B & J Enters.*, 329 Fed. App'x at 420 (citing *Perini*, 915 F.2d at 125.) (emphasis added); *see U.S. Search, LLC v. U.S. Search.com, Inc.*, 300 F.3d 517, 526 (4th Cir. 2002). Accordingly, the Court finds that Plaintiff has not created a genuine issue of fact regarding whether the name Carolina Pediatric Dentistry has acquired a secondary meaning. Consequently, Plaintiff cannot establish that Defendant has infringed on a protectable trademark.

37.     Plaintiff contends that it has established a prima facie case of secondary meaning in the use of the word Carolina in relation to pediatric dentistry in the Market Area, and, as a result, the existence of secondary meaning can only be determined by a jury. (ECF No. 82 at p. 9.) The Court, however, finds that the evidence supporting secondary meaning is close to non-existent and is not substantial evidence upon which a reasonable juror could conclude in Plaintiff's favor on the issue. *Khashman*, 2017 N.C. App. LEXIS 715 at *15; *Sloan*, 119 N.C. App. at 165-66, 458 S.E.2d at 32; *see also B & J Enters.*, 329 Fed, App'x at 417 ("[A]lthough a secondary meaning issue is generally for the trier of fact, when the plaintiff's evidence

is sufficiently lacking, a trial court is entitled to conclude on summary judgment that its mark lacks secondary meaning.").

B. Likelihood of Confusion

38.     Even if Plaintiff were able to make a sufficient showing of secondary meaning, summary judgment is proper because Plaintiff also has not created a genuine issue of material fact that Defendant's use of the name Carolina Orthodontics and Children's Dentistry creates a likelihood of confusion among the consuming public in the Market Area. *See Perini*, 915 F.2d at 127 (quoting *Thompson Med. Co. v. Pfizer, Inc.*, 753 F.2d 208, 213 (2nd Cir. 1985)) ("The ultimate question, for purposes of determining liability in trademark infringement actions, is whether there exists a likelihood that an appreciable number of ordinarily prudent purchasers will be misled, or indeed simply confused, as to the source of the goods in question.") (internal quotations omitted). Courts typically consider nine factors to determine if a likelihood of confusion exists: (1) the strength or distinctiveness of the plaintiff's mark as used in the marketplace, (2) the similarity of the two marks, (3) the similarity of the goods or services that the marks identify, (4) the similarity of the facilities used by the markholders, (5) the similarity of the advertising used, (6) the defendant's intent, (7) actual confusion, (8) the quality of the defendant's product, and (9) the sophistication of the consuming public. *George & Co.*, 575 F.3d at 393.

39.     The Court thoroughly analyzed each of the nine factors from *George & Co.* in its Order on Motion for Preliminary Injunction. *See Johnson & Morris PLLC,* 2016 NCBC LEXIS 78, at *20–29. Although the Court applies a different standard in

deciding a motion for summary judgment, Plaintiff has offered no additional evidence of likelihood of confusion at this stage of the proceeding. For that reason, the Court declines to address again each of the nine factors, but instead limits its discussion to two factors.

40.    As was the case at the preliminary injunction stage, Plaintiff's competent, non-hearsay evidence of actual confusion consists of a single episode in March 2016 in which Dr. Johnson overheard a dentist state she believed Dr. Johnson had opened an office in Cary. Despite the extensive discovery in this case, Plaintiff has failed to identify a single additional incident of consumer confusion between Carolina Pediatric Dentistry and Carolina Orthodontics and Children's Dentistry. *George & Co.*, 575 F.3d at 398 ("Actual confusion can be demonstrated by both anecdotal and survey evidence. Evidence of only a small number of instances of actual confusion may be dismissed as *de minimis*.") (citations omitted). This supports the conclusion that consumers have not, in fact, been confused.

41.    Finally, Plaintiff also contends that Defendant intended to infringe on the name Carolina Pediatric Dentistry and trade on Plaintiff's good-will by originally selecting the name Carolina Orthodontics and Pediatric Dentistry. "If there is intent to confuse the buying public, this is strong evidence establishing likelihood of confusion. . . ." *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1535 (4th Cir. 1984). Plaintiff argues that an issue of fact is created by evidence that (1) at least some of Defendant's doctors knew that Plaintiff was using the Carolina name; (2) Defendant registered several d/b/a names with the Wake County Register of Deeds that "were

strikingly similar to [other] successful Wake County pediatric dental practices"; and (3) Defendant continued to use Carolina in its name after Plaintiff notified Defendant that the similarities in their marks could create confusion. (ECF No. 82 at pp. 21–23.)

42. The evidence is not sufficient to show Defendant intended to infringe on Plaintiff's mark. First, knowledge of another's business, on its own, is not sufficient to show an intent to mislead and cause consumer confusion. *See George & Co.*, 575 F.3d at 598 ("[K]nowledge of another's goods is not the same as an intent to mislead and to cause consumer confusion.") (quotations and citations omitted).

43. Second, all of the d/b/a's registered by Defendant were variations of the geographically descriptive terms "Wake," "Triangle," and "Carolina," combined with other generic or descriptive words and terms indicating a pediatric or children's orthodontic and dental practice. (*E.g.*, ECF No. 95.5.) Defendant did not register or attempt to register suggestive, fanciful, or arbitrary names being used in the Market Area. Defendant's registration of the d/b/a names does not establish that Defendant intended to confuse the buying public that it was the Plaintiff or any other practice.

44. Finally, and most importantly, after Plaintiff communicated to Defendant its worries about Defendant's business name being similar to its own, Defendant changed its name to make it more distinguishable from Plaintiff's. If this shows anything, it shows Defendant's intent to ensure consumers could distinguish between Plaintiff's and Defendant's names. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 319 (4th Cir. 2017) (stating that by decreasing the size of a mark the

plaintiff claimed the defendant was infringing, the defendant made the mark less prominent and, if anything, evidenced "an intent to distinguish its label from [the plaintiff's]").

45.     Ultimately, the Court is guided by the North Carolina Supreme Court's holding in *Charcoal Steak House*:

> Merely to be the first to use a descriptive name, even if it acquires a secondary meaning, does not give the first user an unqualified right to engross it. Even if the words *charcoal steak house* had acquired a secondary meaning so as specifically to connote plaintiff's restaurant in Charlotte, plaintiff still would not be entitled to have defendant restrained from making *any* use whatever of words admittedly *publici juris*. All plaintiff could reasonably ask of the court is that defendant be required to do what he has already done, namely, so designate his restaurant as to prevent reasonably intelligent and careful persons from being misled.

263 N.C. at 203, 139 S.E.2d at 188. Despite Plaintiff's long-standing presence in the Market Area, Defendant has chosen a name sufficiently distinct from the name Carolina Pediatric Dentistry such that "reasonably intelligent and careful persons" will not be misled as to the source of the services. Plaintiff has failed to create a genuine issue of fact that there is a likelihood of success on the question of consumer confusion.

46.     The Motion regarding Plaintiff's First Claim for Relief for unfair competition through trademark infringement should be GRANTED.

*Unfair and Deceptive Trade Practices*

47.     Plaintiff also alleges that Defendant's infringement of Plaintiff's trademark is an unfair method of competition or unfair trade practice in violation of

the NCUDTPA. (ECF No. 1 at ¶¶ 43–49.) Defendant argues that because Plaintiff cannot assert a legally protectable interest in the mark Carolina, its conduct cannot constitute an unfair and deceptive trade act or practice. (ECF No. 72 at p. 5.)

48. G.S. § 75-1.1(a) declares unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." To prevail on a claim for unfair and deceptive trade practices, a plaintiff must "demonstrate the existence of three factors: '(1) an unfair or deceptive act or practice, or unfair method of competition, (2) in or affecting commerce, and (3) which proximately caused actual injury to the plaintiff or his business.'" *Dalton v. Camp*, 138 N.C. App. 201, 209, 531 S.E.2d 258, 264 (2000) (quoting *Murray v. Nationwide Mutual Ins. Co.*, 123 N.C. App. 1, 9, 472 S.E.2d 358, 362 (1996)).

49. The Court already has held that there is insufficient evidence to create a genuine issue of fact regarding Plaintiff's claim for trademark infringement. Because Plaintiff asserts no other conduct by Defendants that could constitute an unfair or deceptive act or practice or an unfair method of competition, there exists no underlying conduct to support a claim for violation of G.S. § 75-1.1. Therefore, the Court concludes that Defendant's Motion regarding Plaintiff's Second Claim for Relief for unfair trade practices in violation of the NCUDTPA should be GRANTED.

50. THEREFORE, IT IS ORDERED that Defendant's Motion for Summary Judgment is GRANTED, and Plaintiff's claims are DISMISSED WITH PREJUDICE.

This the 28th day of September, 2017.

/s/ Gregory P. McGuire

Gregory P. McGuire
Special Superior Court Judge
  for Complex Business Cases